UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT CINCINNATI

**CIVIL ACTION NO. 1:2016-CV-755 (WOB)**

**DARRYL O. MASON**                                                **PLAINTIFF**

**VS.**                      <u>**MEMORANDUM OPINION AND ORDER**</u>

**ADAMS COUNTY RECORDER, ET AL.**              **DEFENDANTS**

This is a civil rights case brought under the 1968 Fair Housing Act, 42 U.S.C. § 1983, 42 U.S.C. § 1985. Following briefing on Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(1), the Court held a hearing on the matter and asked Plaintiff to file a proposed injunction to clarify the relief he sought. Having been duly advised, the Court now issues this Memorandum Opinion and Order.

**I. Facts**

This is a case about old land deeds and plat maps that contain racially restrictive covenants. In 2012, someone—perhaps Plaintiff—requested deeds and plat maps covering 29 properties across mostly Southwest Ohio.[1] Each property was in a different Ohio county. All 29 County Recorders furnished the documents,

---

[1] There are 88 counties in Ohio, and Plaintiff has sued all 88 County Recorders. Yet, Plaintiff only cites racially restrictive covenants in 29 of the 88 counties. Plaintiff argues that "[a]ll other County Recorders in the State of Ohio are required parties under FRCP 19 because without them, this Court cannot accord complete relief among the parties and their absence from the case creates the potential for an incomplete or inconsistent resolution of Plaintiff's claims." (Pl. Compl., PageID# 34-35).

1

each of which contained a reference to a racial restriction.

There is no evidence that any of the racial restrictions had been enforced since May 3, 1948, when the Supreme Court prohibited a court from enforcing such restrictions in *Shelley v. Kraemer*. 334 U.S. 1 (1948). The restrictions here come from documents recorded between 1922 (Pike County) and 1957 (Lawrence County)—all predating the 1968 Fair Housing Act.

Plaintiff, Darryl O. Mason, alleges the "publishing of the covenants intimidates and discourages [him], and other similarly situated persons, from choosing to live in areas containing such restrictive covenants." (Pl. Resp., PageID# 297). There is no evidence Plaintiff has ever visited, attempted to purchase, or attempted to lease any of the properties. Nonetheless, Plaintiff alleges he is entitled to have the County Recorders redact the racially restrictive covenants from the deeds and plat maps, and that he is eligible for punitive damages because the Recorders have housed and provided copies of the 29 documents.

## II. Analysis

**A. Though third-party standing may be available in a case involving racially restrictive covenants, that does not excuse Plaintiff from showing injury, causation, and redressability.**

The Supreme Court has long held that the Constitution requires a Plaintiff to show he was injured, that the Defendant was the cause of the injury, and that the Defendant can redress the injury. *Sierra Club v. Morton*, 405 U.S. 727, 741 (1972). This

Constitutional requirement is essential to discourage suits by those with merely an ideological stake in the litigation. *See United States v. Richardson*, 418 U.S. 166, 192 (1974)(Powell, J., concurring). The Supreme Court thus has found that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

There are exceptions, however. The Supreme Court has created prudential standing requirements, which are not constitutionally required but govern standing nonetheless. *See* Henry P. Monaghan, *Third Party Standing*, 84 COLUM. L. REV. 277, 278 (1984). The Supreme Court has used this authority to loosen standing requirements in a case involving racially restrictive covenants. *See Barrows v. Jackson*, 346 U.S. 249, 257 (1953).

In *Barrows*—which arose in the wake of *Shelley v. Kraemer*, 334 U.S. 1 (1948)—white homeowners sought damages in state court when their neighbor rented to African-Americans in contravention of their agreed racially restrictive covenant. *Barrows*, 346 U.S. at 251. The defendant moved to dismiss on the grounds that plaintiffs requested relief would constitute state action denying non-Caucasian citizens equal protection of the laws in violation of the Fourteenth Amendment. The state trial and appellate courts agreed. *Id.* at 252. The Court noted that to "compel respondent to respond in damages would be for the State to punish her for her

failure to perform her covenant to continue to discriminate against non-Caucasians in the use of her property." *Id*. at 254.

The Court went further, however, and held that the case presented a "unique situation" warranting third-party standing. *Id.* at 257; *see also* Ronald D. Rotunda & John E. Nowak, *Applying Third Party Standing Rules*, 1 TREATISE ON CONST. L. § 2.13(f)(iii)(3) (March 2016). The Court thus found standing to assert the constitutional defense, not based solely on the defendant's potential liability for damages, but also on the injury to the African-American lessees, who were not parties to the case.

Thus, in the rare case that implicates third-party standing, a Plaintiff must meet two hurdles instead of one. *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100 (1979). First, the Plaintiff must show he was personally injured by the Defendant and that the Court can redress the harm. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.4 at 84 (6th ed. 2012)("It must be stressed that the person seeking to advocate the rights of third parties must meet the constitutional standing requirements of injury, causation, and redressability in addition to fitting within one of the [prudential] exceptions."). This constitutional requirement is in addition to — not a substitute for — the prudential requirement of showing that "it would be difficult if not

4

impossible for the persons whose rights are asserted to present their grievance before any court." *Barrows*, 346 U.S. at 257.

Here, Plaintiff fails both requirements for third-party standing. He does not meet the Constitutional requirement of showing a concrete and particularized injury caused by Defendants that is redressable by this Court. This opinion will address those points below. But, to the extent Plaintiff is attempting to present the grievances of others who are affected by the racially restrictive covenants on file in various Ohio County Recorder offices, there is no showing that it would be "difficult if not impossible" for those individuals to bring a suit on their own. *Barrows*, 346 U.S. at 257.

B. **Taxpayer standing is inapplicable to this case.**

Plaintiff has also alluded to taxpayer standing, but that doctrine is also inapplicable. In general, federal courts do not recognize standing merely based on a plaintiff's status as a taxpayer or his interest in seeing that Treasury funds are spent in accordance with the Constitution. *See Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923); Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.4 at 59 (6th ed. 2012). Instead, courts require a "concrete and particularized" injury to the individual, and not something held in common with all of the public. *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1548 (2016).

There is an exception, though, for Establishment Clause

cases. *See* Rachel Bayefsky, *Psychological Harm and Constitutional Standing*, 81 BROOK. L. REV. 1555, 1572-73 (2016). The exception dates back to *Flast v. Cohen*. 392 U.S. 83 (1968). In *Flast*, a group of taxpayers sued a school board in New York to enjoin the board from purchasing textbooks for a parochial school. The Supreme Court found that the taxpayers had standing because the plaintiff's "tax money [was] being extracted and spent in violation of specific constitutional protections." *Id*. at 106.

In the wake of *Flast*, federal courts were flooded with cases involving individuals or groups challenging religious displays or demonstrations on public property. *See, e.g.*, *McCreary County, Ky. v. Am. Civ. Liberties Union of Ky.*, 545 U.S. 844 (2005); *Van Orden v. Perry*, 545 U.S. 677 (2005); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982); *Am. Civ. Liberties Union of Kentucky v. Wilkinson*, 701 F. Supp. 1296 (E.D. Ky. 1988), *aff'd,* 895 F.2d 1098 (6th Cir. 1990). Each of those cases found standing on the *Flast* exception permitting taxpayer standing in Establishment Clause cases. *See, e.g., Wilkinson*, 701 F. Supp. at 1302-03.

Here, the Establishment Clause line of cases is inapplicable. *See Moore v. Bryant*, ___ F.3d ___, 16-60616, 2017 WL 1207595, at *2–3 (5th Cir. Mar. 31, 2017)(holding that Establishment Clause case law is "inapplicable" to an Equal Protection Clause standing analysis); *see also* Bayefsky, 81 BROOK. L. REV. at 1572. Plaintiff's

6

claims do not implicate the Establishment Clause, and the Court cannot find standing on that basis.

### C. Plaintiff does not meet any of the three requirements of Constitutional standing.

#### 1. Plaintiff's injury is not concrete and particularized, so it fails the first requirement of Constitutional standing.

The first prong of the standing inquiry asks whether Plaintiff can show "injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth*, 528 U.S. at 180–81 (internal quotations omitted). Plaintiff argues the Ohio County Recorders have injured him because the "publishing of the covenants intimidates and discourages [him], and other similarly situated persons, from choosing to live in areas containing such restrictive covenants." (Pl. Resp., PageID# 297). He believes the documents "creat[e] a feeling that [non-Caucasians] are unwelcome or do not belong in certain neighborhoods." (Compl., ¶ 194).

Notably, Plaintiff does not allege that he personally attempted to purchase, rent, or view any of the properties covered by the racially restrictive covenants.[2] Plaintiff was thus not

---

[2] In lieu of explaining how the presence of the racially restrictive covenants on historical documents constitutes an injury in fact to him, Plaintiff argues he is injured because the County Recorders may have violated Title VIII of the 1968 Fair Housing Act. This is not sufficient, though, because "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 at n.3 (1997). It is true that the Sixth Circuit has held that when a statute confers a new legal right on a person, that

"himself among the injured." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992)(quoting *Sierra Club*, 405 U.S. at 734).

It is true that this Court must broadly construe standing in Fair Housing Act cases. *See Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590, 593 (10th Cir. 1996)(citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 370 (1982)). As such, the Court finds Plaintiff's cognizance of restrictive deeds and plat maps is somewhat similar to plaintiffs who view advertisements with racially restrictive undertones. For example, the Second Circuit held that simply viewing a newspaper advertisement implying a racial preference is sufficient to constitute an injury. *Ragin v. Harry Macklowe Real Est. Co.*, 6 F.3d 898, 903–05 (2d Cir. 1993).

But there are critical differences between seeing an advertisement that implies a *present* intent to discriminate against non-Caucasians and discovering a now-unenforceable restriction on a property the Plaintiff does not intend to purchase, rent, or pursue. Here, there is no threat that the racial restrictions at issue would ever be enforced because Courts

---

person has Constitutional standing if the facts show a concrete, particularized, and personalized injury resulting from the statutory violation. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015). Yet, the Supreme Court has found that an allegation of a Fair Housing Act violation will not constitute an injury in fact if the Plaintiff did not personally suffer the discrimination. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374–75 (1982). So Plaintiff must still show that he personally suffered a harm, even assuming the Recorders violated the Fair Housing Act.

across America have been prohibited from enforcing such covenants for 69 years, Congress prohibited the enactment and enforcement of such covenants 49 years ago, and the Ohio legislature prohibited the same 48 years ago. *Shelley*, 334 U.S. at 19; 42 U.S.C. §§ 3601–3631; OHIO REV. CODE ANN. § 4112.02(H)(9).

Without the threat of present enforcement of these covenants, Plaintiff is unable to show an "actual or imminent" injury to himself today. *Lujan*, 504 U.S. at 560. Instead, he relies on his discouragement upon viewing the 29 historical deeds and plat maps. But "[i]t is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 at n. 8 (1983).

Plaintiff's subjective discouragement is precisely the type of "conjectural or hypothetical" injury the Supreme Court has said is insufficient to constitute an injury in fact. *Friends of the Earth, Inc.*, 528 U.S. at 180; *see also Moore*, 2017 WL 1207595, at *2 (denying standing for African-American attorney challenging use of Confederate flag within the Mississippi state flag because "to plead stigmatic-injury standing, Plaintiff must plead that he was personally subjected to discriminatory treatment").

The lack of injury is decisive and constrains this Court from adjudicating the merits of the case. *See Friends of the Earth*, 528 U.S. at 180-81. Nonetheless, this opinion will address the

other two elements of constitutional standing.

> **2. Plaintiff fails the second prong of Constitutional standing because any injury he suffered was caused by the drafters of the deeds and plat maps, rather than the County Recorders.**

Under the second prong of the Constitutional standing inquiry, this Court must assess whether there is an injury "that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Children's Healthcare is a Leg. Duty, Inc. v. Deters*, 92 F.3d 1412, 1423 (6th Cir. 1996)(citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

As noted, Plaintiff's alleged injury is his discouragement upon seeing the restrictive covenants in the 29 documents he cites. There are three problems with Plaintiff basing standing on this injury.

First, Plaintiff has sued 89 officials, only 30 of whom have any connection to the documents at issue. The unrelated 59 Defendants could not have caused Plaintiff's discouragement upon seeing documents in another county.

Second, to the extent Plaintiff's discouragement is an injury, that discouragement was not caused by the County Recorders, but by the drafters of the documents—the real estate agent or title company. *See* OHIO REV. CODE ANN. § 317.082(A). The County Recorder did not create these documents or have any hand in incorporating

the restrictive clauses at issue.

Third, if the alleged injury is the County Recorder furnishing these documents, the cause of such injury is the Ohio legislature, which passed the Code provisions requiring the Recorder to provide the documents. *See* OHIO REV. CODE ANN. § 317.27.

Thus, the County Recorders are not the true cause of Plaintiff's injury, to whatever extent Plaintiff is injured. As such, there can be no standing.

> **3. Plaintiff cannot show the third element of Constitutional standing because a County Recorder cannot redress any perceived harm by redacting historical documents absent permission from the Ohio legislature.**

Under the third prong of the Constitutional standing analysis, Plaintiff must show that a favorable judicial ruling "will remove the harm" he suffers. *Warth,* 422 U.S. at 505.

Defendants assert it is impossible for this Court to provide relief that would "alleviate any subjective feeling" of discouragement Plaintiff experiences by reading the restrictive covenants. (CORSA D. Mot. to Dismiss, p. 6). However, redacting the language from the documents would at least remove reminders of the historical discrimination. Thus, this Court would need to determine whether it could lawfully order the County Recorders to redact the documents. This requires an examination of the duties of an Ohio County Recorder.

An Ohio County Recorder is required to record all deeds and

plat maps. OHIO REV. CODE ANN. §§ 317.08(A)(1); 317.08(A)(24); 317.13(A). The mortgage company, bank, title agency, or real estate agent is responsible for the information on deeds and maps. *See* OHIO REV. CODE ANN. § 317.082(A). If those individuals attempt to file a deed with personal information such as a social security number, the County Recorder is allowed to "immediately redact" the personal information. OHIO REV. CODE ANN. § 317.082(B).[3] That is the only time the Ohio Revised Code allows a County Recorder to alter a document it receives for filing. The County Recorder may also refuse to file documents it believes to be "materially false or fraudulent," though the Recorder has no affirmative duty to inspect the documents before filing. OHIO REV. CODE ANN. § 317.13(B).

Plaintiff would have this Court order the County Recorder to retroactively alter documents that have been on file for 60 years or more.[4] The authorities do not support Plaintiff's position.

---

[3] Even if both the deed filer and the County Recorder fail to notice that there is personal identification information on a deed before it is filed and available to the public, the person whose information is released cannot sue the County Recorder unless he can show the Recorder acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." OHIO REV. CODE ANN. § 317.082(B).

[4] In addressing that issue, this Court is not drawing on a blank canvas. The question of whether a county recorder has discretion to reject and alter documents before and after filing has long vexed American courts. *See Peery's Lessee v. Burton*, 1 Del. Cas. 28, 28 (1794)(finding a recorder was a ministerial officer without discretion). Courts and officials have addressed the issue in Michigan, Washington, Illinois, and Washington, D.C. *Jennings v. Dockham*, 58 N.W. 66, 68 (Mich. 1894)(holding that a Recorder cannot correct a record once it has been recorded); *Dirks v. Collin*, 79 P. 1112 (Wash. 1905)(limiting power of County Recorder); *City of Peoria v. C. Nat. Bank*, 79 N.E. 296, 303 (Ill. 1906)(finding Illinois County Recorders cannot make alterations to plat maps); *Dancy v. Clark*, 24 App. D.C. 487, 499 (D.C. Cir.

The Ohio Supreme Court first addressed a County Recorder's powers in 1961, finding that "in the performance of [a Recorder's] duties, he, as a ministerial officer, may exercise some discretion and is not absolutely required to accept, record and index every instrument presented to him." *State ex rel. Preston v. Shaver*, 173 N.E.2d 758, 760 (Ohio 1961)(finding the County Recorder was not required to record instruments granting the state an easement). This Court recently agreed with that sentiment. In holding that a Recorder does not have an affirmative duty to refuse to file improper leases, this Court found that "the Recorder may exercise discretion in refusing to record written instruments that do not conform to statutory requirements." *Wiley v. Triad Hunter Gathering LLC*, 2:12-CV-605, 2012 WL 6611480, at *10 (S.D. Ohio Nov. 30, 2012), *Report and Recommendation adopted sub nom. Wiley v. Triad Hunter Gathering*, 2:12-CV-605, 2012 WL 6616164 (S.D. Ohio Dec. 19, 2012)(citing *Preston*, 173 N.E.2d at 760; OHIO REV. CODE ANN. § 317.13(B)).

*Wiley* and *Preston* only speak to whether the Ohio legislature has given the County Recorder discretion to refuse to file non-conforming documents. In doing so, *Wiley* and *Preston* merely echo the Ohio Revised Code in stating a County Recorder can read a deed or plat map and exercise his or her independent judgment to

---

1905)("The courts will sustain him when he acts within the limits of the discretion reposed in him.").

determine whether the document meets the requirements for filing. *See* OHIO REV. CODE ANN. §§ 317.13(B); 317.082(B).

The issue before the Court is different. Plaintiff's request would require the Recorder to alter documents already on file. No Ohio cases appear to have addressed this issue. Instead, an Ohio Attorney General provided his opinion that the legislature has not granted the Recorders the power to retroactively alter previously recorded documents. *See* Op. of Anthony J. Celebreeze Jr., OAG 90-103, 1990 WL 547013 (Dec. 31, 1990)(advising that an Ohio County Recorder does not have the authority to change a record of a mortgage after recording).[5]

This limitation is the proper view of the Recorder's powers. Though the Ohio legislature has given the Recorder the power to redact parts of a deed or plat map *before* filing, the legislature has not given the Recorder the power to make those changes to documents *after* filing. Ordering the 89 Defendants in this case to redact any mention of a racially restrictive covenant would be requiring the County Recorders to go beyond the limited powers that the Ohio Legislature has granted to them. (*See* D. Hamilton Co. Reply, Doc. # 43 (arguing the Ohio legislature should have been joined as a Defendant, because relief cannot be granted without it)).

---

[5] Another Attorney General also opined that the Recorder's discretion is limited by the legislature. *See* Betty D. Montgomery, OAG 97-055, 1997 WL 797993 (Dec. 29, 1997)(finding a County Recorder does not have the authority to record a land patent).

14

Therefore, this Court does not have the power to redress the Plaintiff's alleged injury by requiring the County Recorders to redact all documents on file with racially restrictive language. And without a showing redressability, the Plaintiff lacks Constitutional standing. *See Friends of the Earth*, 528 U.S. at 180-81.

### III. Conclusion

Because Plaintiff is required to meet the Constitutional requirements of injury, causation, and redressability, and because Plaintiff is unable to meet any of those three prongs, Plaintiff does not have standing to bring this case.

Therefore, having reviewed this matter, and being sufficiently advised,

**IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 19, 25, 30, 31, 32, 33, 34, and 35) are hereby **GRANTED**. A separate judgment shall enter concurrently herewith.

This 10th day of May, 2017.



Signed By:
*William O. Bertelsman* WOB
United States District Judge